**Notice of Removal, Attachment 2: Complaint**

FILED
2025 SEP 30 01:15 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-28793-9 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR THE COUNTY OF KING**

| | |
|---|---|
| KASEY MACPHERSON,<br>Plaintiff,<br>v.<br>SEATTLE FOOD PARTNERS, LLC d/b/a BREWTOP SOCIAL, a Washington Company,<br>and<br>FATIMA NOBLE, an individual,<br>Defendants. | Case No.:<br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff, Kasey MacPherson, states and alleges the following facts and causes of action against the above-named Defendants:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter. RCW 48.30.015.

2. Venue is proper in King County under RCW 4.12.025 because the Defendants reside and/or do business there.

**PARTIES**

3. Plaintiff Kasey MacPherson is a resident of King County, Washington.



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

4. Defendant Seattle Food Partners, LLC, d/b/a BrewTop Social (hereinafter "BrewTop") is a Georgia company doing business in the State of Washington. BrewTop is an "employer" under the Healthy Starts Act ("HSA"), RCW 43.10.005, the Washington Law Against Discrimination ("WLAD"), RCW 49.60.040, and the Washington's Paid Family and Medical Leave Act ("PFMLA"), RCW 50A.05.010(7).

5. Defendant Fatima Noble acted directly or indirectly in the interest of BrewTop and was therefore an "employer" under the HSA and the WLAD. Ms. Noble is a resident of Washington State. She was employed as BrewTop's Human Resources Representative at the relevant times herein.

6. BrewTop is a restaurant located in the SeaTac International Airport, which is in King County, Washington.

## FACTUAL BACKGROUND

7. On January 5, 2023, Plaintiff began working as a full-time server at BrewTop in the SeaTac International Airport in SeaTac, Washington.

8. Plaintiff informed manager Frankie Mahr on May 15, 2023, that she was pregnant.

9. On May 29, 2023, Plaintiff called in sick due to pregnancy-related symptoms. Plaintiff was told she needed to provide a doctor's note for her absence, despite this being against the typical practice for employees who are sick for only one day.

10. After informing BrewTop of her pregnancy, BrewTop began to schedule Plaintiff for fewer hours.

11. On June 1, 2023, Plaintiff emailed human resources representative Fatima Noble requesting information on paid family leave and asking what information she needed to provide to BrewTop for maternity leave. Plaintiff complained that she was being harassed and retaliated



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

against regarding her pregnancy, including being asked for a doctor's note to take one sick day, when non-pregnant employees were not required to produce a doctor's note, being taken off the schedule for two days, and other issues that indicated her supervisor Kathy Lee was singling her out and micromanaging her.

12. On June 4, 2023, Plaintiff emailed Ms. Noble to inform her of the scheduling concerns, writing again that she feared she was being retaliated against with her schedule. She explained that she received reduced hours without notice. Namely, her shifts were mostly five hours whereas they had typically been around seven hours.

13. On June 13, 2023, Plaintiff reported to Ms. Noble that her supervisor Ms. Lee was sharing details about her hostile environment and retaliation complaint with coworkers.

14. On or around June 23, 2023, Plaintiff requested pregnancy accommodations, including keeping a refillable water bottle closer to her workstation since she would need more water during her pregnancy. Plaintiff was informed that she would need a doctor's note to support her accommodation requests before they could be granted. Other employees were permitted to have accessible beverages without a doctor's note.

15. On June 29, 2023, Plaintiff provided a doctor's note that certified her pregnancy accommodation requests, which included:

a. No repetitive lifting, pushing, or pulling objects over 20 pounds;

b. No standing for long periods of time;

c. Adequate breaks at least every two hours;

d. No continuous bending during shifts; and

e. Hydration and accessibility to hydration in close proximity as needed.

The note included an estimated delivery date of January 19, 2024, and a contact number if BrewTop had any questions about the restrictions.



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

16. Ms. Noble responded that they needed to investigate the accommodation requests before Plaintiff could return to work.

17. The next day, Plaintiff followed up with Ms. Noble, verifying that she was unable to come to work until the investigation was complete.

18. On July 7, 2023, Plaintiff texted Frankie Mahr regarding her involuntary leave and explained that she felt that the resulting reduction in pay was retaliatory and because of her pregnancy.

19. On July 8, 2023, Plaintiff was permitted to return to work.

20. Although BrewTop told Plaintiff it could accommodate her, it relegated her to the smallest section of the restaurant upon her return. This section tended to have fewer customers so, consequently, she received fewer tips.

21. After Plaintiff's accommodations request, BrewTop changed the protocol many times. BrewTop initially allowed Plaintiff to take ten-minute breaks every two to three hours, during which the manager would take over her position. But BrewTop later required Plaintiff to clear and close her entire section simply to take a ten-minute break. Closing her section could take up to an hour, which meant that her income was reduced because she could not get tips during this time. The breaks were unpaid and other employees took breaks without having to clear their sections.

22. On September 14, 2023, Plaintiff again emailed Ms. Noble to inquire about maternity leave. She included an estimated due date of January 19, 2024. Ms. Noble never responded to Plaintiff's email.

23. BrewTop significantly reduced Plaintiff's shifts after her second request for maternity leave information. Before September 14, 2023, Plaintiff worked an average of 42



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

hours per pay period. After this date, BrewTop permitted Plaintiff to work fewer than 30 hours per pay period.

24. On October 26, 2023, Plaintiff emailed Ms. Noble to inform her of the continued reduction in hours and explained she felt BrewTop was retaliating because she was pregnant.

25. The next day, Plaintiff asked Ms. Noble via email: "Why am I, the only pregnant employee currently working, required to have open availability to receive shifts?" Ms. Noble did not answer.

26. On November 6, 2023, Plaintiff further expressed her concerns in an email to Ms. Noble regarding the lack of shifts. She explained that the reduced hours impacted her finances and threatening her eligibility for maternity leave benefits. She said she was concerned about being "directly targeted due to being pregnant…." She also told her that the lack of hours was interfering with her eligibility for maternity leave. Ms. Noble offered no resolution to the lack of shifts. Plaintiff continued to receive fewer than 30 hours on the schedule per pay period.

27. BrewTop never provided information about maternity leave before Plaintiff went on leave to give birth. Instead, Plaintiff learned about her leave options from her midwife.

28. On December 25, 2023, Plaintiff submitted a Paid Family and Medical Leave application and emailed Ms. Noble asking for leave information and notifying her that her doctor had expressed concerns about her health.

29. On December 26, 2023, Plaintiff contacted Maria Brandt, the scheduling manager at that time, to inform her that it would be her last day before taking medical leave. Plaintiff told Ms. Brandt that she had reached out to HR regarding medical benefits but was informed Ms. Noble was out of office until the next day.



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

30. The next day, Ms. Noble emailed Plaintiff saying: "If you need to go out on maternity leave prior to your FMLA eligibility date, you will need to provide documentation. Until then, the expectation is for you to report to work for all scheduled work shifts."

31. On December 28, 2023, Ms. Brandt responded to Plaintiff's December 26, 2023, text thanking her for letting her know that she was taking maternity leave and requesting that she provide a doctor's note.

32. On December 30, 2023, Plaintiff again contacted Ms. Brandt expressing her confusion about leave. Despite informing Ms. Brandt that December 26, 2023, would be her last day before taking leave, BrewTop had scheduled her to work December 30 through January 2. Plaintiff explained that she had been told two different things about whether she was approved for leave.

33. Because of these conflicting messages, Plaintiff went into work despite feeling unwell. Other employees expressed surprise that she was working. Plaintiff was told she was not expected to work that shift, so she went home. Plaintiff again emailed Ms. Brandt, expressing her confusion as to whether she was expected to come into work for the next few days.

34. On January 1, 2024, Plaintiff provided a request for medical leave on a form titled Medical Certification Serious Health Condition, which provided her doctor's reason for her inability to work, the start date and the end date, as well as contact information for Plaintiff's medical provider.

35. As of January 5, 2024, BrewTop had not responded to Plaintiff, so she emailed to confirm that Ms. Noble and Ms. Brandt had received the leave documentation. In a call that same day with Ms. Noble, Plaintiff informed her that although her medical leave was dated December 30, 2023, she was still on the schedule. Ms. Noble told Plaintiff that she would not accept her



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

leave paperwork because it was not on letterhead. Up to this point, Ms. Noble had not specified what type of paperwork would be required for leave.

36. Plaintiff also informed Ms. Noble that her midwife had told her that she was already two centimeters dilated, 80% effaced, and that she did not think she would make it to the weekend before labor started. Even so, Ms. Noble stated that Plaintiff was still responsible for her next four shifts.

37. After the call, Plaintiff sent a follow-up email the same day, once again stating that she had not received any forms for medical leave despite multiple requests. She referred to Ms. Noble's request for a doctor's note despite having already provided one on January 1, 2024, which included the doctor's description of her health condition, the start and end dates of leave, and her provider's signature and contact information. She requested clarification on what additional information would be needed in the doctor's note. Ms. Noble responded that they could touch base on Monday, January 8, 2024, about what information was needed. She, once again, asked Plaintiff to confirm her due date.

38. On January 7, 2024, Plaintiff provided BrewTop with a doctor's note, which stated she had been unable to work because:

> **Given physical nature of work, it is my medical opinion that [patient] is unable to work due to pubic symphysis and sciatica. Leave from work is to begin 12/30/2023.**

39. The same day, Plaintiff gave birth to her daughter.

40. On January 8, 2024, Plaintiff emailed Ms. Noble asking what information she needed to process her medical leave. She again stated that she had not received any forms or documents related to her leave, despite multiple requests. Plaintiff informed Ms. Noble that her



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

daughter was born and asked about any documents that were required to start her maternity leave.

41. Plaintiff informed Ms. Noble that she planned to take the full 12 weeks of paid family medical leave beginning January 7, 2024. She also provided another doctor's note. Ms. Noble replied that she had discussed the situation with Yunda Thompson, the benefits manager, and that Ms. Thompson would communicate with Plaintiff.

42. On January 9, 2024, Ms. Thompson sent an email regarding Plaintiff's leave of absence request. She told Plaintiff that she was ineligible for FMLA and job protection due to deficient work hours. She said Plaintiff did not satisfy the eligibility requirement of 1,250 work hours the previous 12 months from the request for her leave.

43. On January 12, 2024, Plaintiff submitted Washington Paid Family and Medical Leave information. On January 18, 2024, Plaintiff received a letter from the Employment Security Department stating she had been approved for paid leave benefits from December 30, 2023, to January 27, 2024.

44. On February 5, 2024, Plaintiff received a letter from the Employment Security Department stating she had been approved for paid leave benefits from January 28, 2024, to April 20, 2024.

45. From January through April 2024, Plaintiff believed she was on approved paid leave. During this time, BrewTop did not contact Plaintiff by text or phone call.

46. On April 2, 2024, Plaintiff contacted her new Manager Fred Roller to let him know she was ready to return to work from maternity leave. He gave Plaintiff the number of the new scheduling manager. Plaintiff reached out but never heard back.

47. In April 2024, Plaintiff received a call from the Port of Seattle asking when she was going to return her badge. Plaintiff then assumed she had been terminated.



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

48. Ms. Noble emailed Plaintiff in mid-April informing her that BrewTop had terminated her employment.

49. Plaintiff later learned that BrewTop had terminated her employment on March 7, 2024, while she was on maternity leave.

**COUNT I: HSA - Pregnancy Discrimination and Failure to Accommodate**

50. Plaintiff brings this claim against all Defendants and incorporates by reference each and every allegation in this Complaint as if set forth herein.

51. Plaintiff was discriminated against by Defendants in the terms, conditions, and privileges of her employment based on her pregnancy, pregnancy-related health conditions, and requests for accommodation.

52. Defendants discriminated against Plaintiff by reducing her hours after learning she was pregnant and needed accommodations; by moving her to a smaller section of the restaurant; by forcing her to take leave while "investigating" her accommodation request; by requiring her to produce a doctor's note for accommodations that other non-pregnant employees were not required to produce a doctor's note for (*e.g.*, one sick day and having a water bottle in a work station); by forcing her to produce a doctor's note for accommodations specifically not requiring a doctor's note under the HSA, by terminating her employment, and by other acts and omissions referenced herein.

53. Defendants specifically violated RCW 43.10.005(3) in addressing Plaintiff's requests for accommodations.

54. As a direct and proximate result of the actions and conduct of Defendants, Plaintiff has suffered damages.

**COUNT II: WLAD Pregnancy Discrimination**

55. Plaintiff brings this claim against all Defendants and incorporates by reference



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

each and every allegation in this Complaint as if set forth herein.

56. Plaintiff was discriminated against by Defendants in the terms, conditions, and privileges of her employment based on her sex/pregnancy.

57. Defendants discriminated against Plaintiff by reducing her hours after learning she was pregnant and needed accommodations; by moving her to a smaller section of the restaurant; by forcing her to take leave while "investigating" her accommodation request; by requiring her to produce a doctor's note for things that other non-pregnant employees were not required to produce a doctor's note for (*e.g.*, one sick day and having a water bottle in a work station); by forcing her to produce a doctor's note for accommodations specifically not requiring a doctor's note under the HSA, by terminating her employment, and by other acts and omissions referenced herein.

58. As a direct and proximate result of the actions and conduct of Defendants, Plaintiff has suffered damages.

**COUNT III: WLAD - Retaliation**

59. Plaintiff brings this claim against all Defendants and incorporates by reference each and every allegation in this Complaint as if set forth herein.

60. Plaintiff's requests for maternity leave information and accommodation at work due to her pregnancy, pregnancy-related health conditions, and her complaint to Defendants that she was being retaliated against and treated unfairly due to her pregnancy constituted protected activity.

61. Defendants retaliated against Plaintiff because she engaged in this protected activity by reducing her hours; moving her to a smaller section of the restaurant; forcing her to take involuntary leave following her accommodation request; by requiring her to produce a doctor's note for accommodations that other non-pregnant employees were not required to



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

produce a doctor's note for (*e.g.*, one sick day and having a water bottle in a work station); by forcing her to produce a doctor's note for accommodations specifically not requiring a doctor's note under the HSA, by terminating her employment, and by other acts and omissions referenced herein.

62. As a direct and proximate result of the actions and conduct of Defendants, Plaintiff has suffered damages.

**COUNT IV: PFMLA - Retaliation**

63. Plaintiff brings this claim against defendant BrewTop and realleges and incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

64. Plaintiff engaged in protected activity by requesting information about Washington Paid Family and Medical Leave and by applying for and receiving Washington Paid Family and Medical Leave.

65. Defendant BrewTop retaliated against Plaintiff because she engaged in this protected activity by terminating her employment.

66. As a direct and proximate result of Defendant BrewTop's actions, Plaintiff suffered damages.

**COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

67. Plaintiff brings this claim against defendant BrewTop and realleges and incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

68. The PFMLA recognizes a clear public policy mandate promoting family leave, including maternity leave. RCW 50A.05.005 ("The legislature declares it to be in the public interest to create a family and medical leave insurance program to provide reasonable paid



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

family leave for the birth or placement of a child with the employee . . ."). Further, the legislature has recognized a clear public policy mandate promoting family leave to bond with an employee's child during the first twelve months after the child's birth. RCW 50A.05.010(10).

69. Defendant BrewTop discouraged Plaintiff from exercising her rights under Washington's laws promoting and protecting family and medical leave and therefore jeopardized the strong public policies protecting such leave.

70. Plaintiff engaged in protected activity by requesting information about Washington Paid Family and Medical Leave and by applying for and receiving Washington Paid Family and Medical Leave.

71. Defendant BrewTop terminated Plaintiff's employment because she engaged in this protected activity, *i.e.*, exercising her legal right to take protected family and medical leave associated with the birth of her child. Accordingly, Plaintiff's public-policy linked conduct caused Plaintiff's dismissal.

72. As a direct and proximate result of Defendant BrewTop's actions, Plaintiff has suffered damages.

**REQUEST FOR RELIEF**

73. Plaintiff Kasey MacPherson requests all damages allowable under Washington law, including the following:

a. Compensatory damages in the form of emotional distress damages;

b. Post-judgment interest;

c. Costs and expenses; and

d. Any and all other and further relief this Court deems just and proper.

Dated this 30th day of September, 2025.



MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

Respectfully submitted,

By: /s/ *Amy K. Maloney*
Amy K. Maloney, WSBA 55610
By: /s/ *Matt J. O'Laughlin*
Matt J. O'Laughlin, WSBA 48706
MALONEY O'LAUGHLIN, PLLC
200 W. Mercer Street, Ste. 506
Seattle, Washington 98119
Tel: 206.513.7485
amy@pacwestjustice.com
matt@pacwestjustice.com

By: /s/ *Thomas P. Holt*
Thomas P. Holt, WSBA 39722
HOLT LEGAL, PLLC
705 2nd Avenue, Ste. 1200
Seattle, Washington 98104
Tel: 206372.6261
tom@holt-legal.com

Attorneys for Plaintiff